**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **KELLI A. SEIBERT,** | |
| *Plaintiff,* | **Case No. 2:25-cv-03090-JDW** |
| v. | |
| **CITY OF PHILADELPHIA,** | |
| *Defendant.* | |

## <u>MEMORANDUM</u>

Not every workplace dispute violates employment discrimination laws. Sometimes, employees don't get along with their coworkers or supervisors. Maybe it's because the supervisor is unpleasant. Maybe the worker's not a good worker. Or maybe the two just aren't a good combination. Kelli Seibert's Complaint describes numerous disagreements with supervisors and disciplinary actions that she suffered during her employment with the City of Philadelphia's Department of Human Services. But her allegations do not plausibly suggest discrimination based on race or sex under federal law, and she did not exhaust the additional claims she references before the EEOC. I will therefore grant the City's motion to dismiss, though I will allow Ms. Seibert an opportunity to amend certain claims.

I.    BACKGROUND

A.    Factual Background

Ms. Seibert worked for the City of Philadelphia Department of Human Services as a Social Work Services Manager II beginning in March 2021. According to her Complaint, problems between Ms. Seibert and her supervisors began in October 2022 and continued until she resigned on March 11, 2024.

Ms. Seibert's Complaint consists largely of a timeline describing events that occurred during her employment. That timeline spans more than ten pages and recounts numerous interactions with supervisors, internal complaints she made about workplace conduct, and disciplinary notices called "Employee Violation Reports." The timeline format itself makes the allegations difficult to follow, as the events are presented as a running chronology rather than as organized factual allegations tied to specific claims. The Complaint also describes disputes regarding case assignments, timesheets, payroll entries, and communications with supervisors and administrators. She identified many of the individuals in the timeline only by their initials.

According to the Complaint, Ms. Seibert believed that supervisors and administrators treated her unfairly and failed to address complaints she raised internally. She alleges that supervisors issued disciplinary notices that she believed were unwarranted, altered her timesheets, and scrutinized her work more closely than that of other employees. She also alleges that she was prevented from taking a promotional

examination in January 2024. Ms. Seibert contends that these issues created a hostile workplace and ultimately forced her to resign from DHS.

The materials attached to Ms. Seibert's Complaint include documents relating to her communications with the Equal Employment Opportunity Commission. Those documents show that Ms. Seibert submitted an EEOC inquiry on March 7, 2024,[1] shortly before resigning from DHS on March 11, 2024, citing retaliation, harassment, and hostile work environment, among other allegations. She later filed a formal Charge of Discrimination with the EEOC on August 18, 2024. On the EEOC charge form, Ms. Seibert checked the boxes for discrimination based on race and sex. In the narrative portion of the charge, she stated that she "allege[s] that [she has] been discriminated against based on [her] sex (female) and race (white), in violation of Title VII of the Civil Rights Act of 1964." (ECF No. 9-3.)

After receiving a Right to Sue Letter, Ms. Seibert filed this lawsuit on June 11, 2025. Her Complaint states that she seeks relief under federal employment discrimination laws, including Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. The City has moved to dismiss. After the City filed its motion, Ms. Seibert submitted a letter explaining her view that DHS supervisors retaliated against her and created a hostile workplace. (ECF No. 12.) I construe that letter as Ms. Seibert's response to the motion to dismiss. The motion is now ripe.

---

[1] Ms. Seibert submitted her letter of resignation on March 7, 2024.

## II.    LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand 'only a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted). When a plaintiff is proceeding pro se, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

III.    ANALYSIS

A.    Timeliness Of Allegations

The timing of Ms. Seibert's administrative charge limits the claims she can pursue. Before bringing a Title VII claim in federal court, a plaintiff must file a charge of discrimination with the EEOC within a specified period after the allegedly unlawful employment practice occurs. Because Pennsylvania is a "deferral state," that period is 300 days. *See* 42 U.S.C. § 2000e–5(e)(1).

The materials attached to Ms. Seibert's Complaint show that she first submitted an EEOC inquiry on March 7, 2024, a day after submitting her resignation letter to DHS. That submission appears to have been an initial intake communication with the agency describing her concerns about her employment (and were not limited to allegations of race or sex discrimination). Ms. Seibert later filed a formal Charge of Discrimination with the EEOC on August 18, 2024. It is that formal charge that begins the administrative process and determines the scope and timing of the claims she may pursue here. *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398-99 (3d Cir.1976); *Folgueras v. Dubois Reg'l Med. Ctr.,* No. 3:24-CV-0015, 2025 WL 3706382, at *5 (W.D. Pa. Dec. 22, 2025). Because Ms. Seibert filed her formal EEOC charge on August 18, 2024, any discrete employment action that occurred more than 300 days earlier falls outside Title VII's filing period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). Working backward from August 18, 2024, that means Ms. Seibert may pursue claims only for discrete employment actions that occurred on or after October 23, 2023. (Even if I were

5

to treat the initial submissions to the EEOC as tolling the statute of limitations, the claims would have to have accrued by May 12, 2023.)

Much of the timeline in Ms. Seibert's Complaint describes events that occurred well before that date, beginning in October 2022. To the extent she seeks to rely on those earlier events as independent acts of discrimination or retaliation, Title VII's limitations period bars those claims. Earlier events may still provide background context for timely claims, but they cannot themselves establish liability under the statute. *See Morgan*, 536 U.S. at 113.

### B.    Plausibility Of Claims

Even putting timeliness aside and reading the Complaint as broadly as possible, Ms. Seibert still does not allege facts that plausibly state a claim under Title VII or the ADA. Nor does the result change if I were to construe Ms. Seibert's allegations as describing a continuing course of conduct. Under the continuing violation doctrine, a plaintiff may in limited circumstances rely on conduct that began outside the filing period if it forms part of an ongoing unlawful practice and at least one act occurred within the limitations period. *See id*. at 117. But viewing Ms. Seibert's allegations that way does not salvage her claims. The Complaint still does not plausibly connect the conduct she describes to discrimination, retaliation, or any other violation of federal employment law. The timeline recounts workplace disputes, disciplinary actions, and disagreements with supervisors, but it does not include facts suggesting that those actions occurred because of a protected characteristic, protected activity, or a denied

accommodation. Thus, whether I examine the allegations individually, limit my review to timely conduct, or treat the timeline as describing a continuing course of conduct, the Complaint still does not state a plausible claim for relief.

### 1.    Race and sex discrimination

Title VII prohibits employers from discriminating against employees because of protected characteristics such as race or sex. To state a discrimination claim under Title VII, a plaintiff must allege facts suggesting that she suffered an adverse employment action because of a protected characteristic such as race or sex. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Ms. Seibert alleges that she is Caucasian and female, but nothing in the Complaint plausibly suggests that DHS took any action because of those characteristics. Instead, the Complaint describes workplace disputes with supervisors, disciplinary notices, and disagreements about job responsibilities. These everyday disputes might make the workplace unpleasant, but absent some connection to race or gender, they don't make the workplace illegal. Because Ms. Seibert does not allege facts linking the conduct she describes to her race or sex, the Complaint does not plausibly state a claim for discrimination under Title VII.

### 2.    Other claims

Ms. Seibert's filings also reference several additional theories of liability, including retaliation, failure to promote, harassment, and failure to accommodate a disability. Even if I assume that Ms. Seibert intended to assert such claims, they cannot proceed because she did not exhaust her administrative remedies with respect to them. Before bringing a

Title VII or ADA claim in federal court, a plaintiff must first present the claim to the EEOC so that the agency has an opportunity to investigate the allegations and attempt to resolve the dispute through administrative means. The scope of a federal lawsuit is therefore limited to claims that were fairly within the scope of the EEOC charge. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163–64 (3d Cir. 2013).

The EEOC charge attached to Ms. Seibert's Complaint only alleges discrimination based on race and sex. On the EEOC charge form, Ms. Seibert checked the boxes for discrimination based on race and sex but did not check other boxes, such as retaliation. The narrative portion of the charge is consistent with those selections. Because she did not present claims for retaliation, failure to promote, harassment, and failure to accommodate to the EEOC, the agency did not have the opportunity to investigate those allegations, and the Right to Sue Letter does not cover those claims. *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir.1996); *Fessler v. PPL Utilities Corp.*, No. 08–1756, 2008 WL 3832224, at *7-8 (E.D.Pa. Aug. 14, 2008). Ms. Seibert therefore did not exhaust her administrative remedies with respect to those claims and cannot pursue them in this lawsuit.

Even setting exhaustion aside, however, those claims would still fail because the Complaint does not allege facts that plausibly support them. A retaliation claim requires allegations that the plaintiff engaged in protected activity and that the employer took adverse action because of that activity. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). Although Ms. Seibert describes raising concerns through internal

channels, the Complaint does not allege facts suggesting that any employment decision occurred because she engaged in protected activity. Similarly, a failure to promote claim requires factual allegations suggesting that the plaintiff was denied a promotion under circumstances giving rise to an inference of unlawful discrimination. *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir.2001). While Ms. Seibert asserts that the City prevented her from taking a promotional examination, the Complaint does not include facts suggesting that the alleged decision occurred because of a protected characteristic or protected activity. *See Connelly*, 809 F.3d at 788 (footnote omitted).

The same is true of Ms. Seibert's apparent harassment and failure to accommodate theories. A hostile work environment claim requires allegations that the plaintiff experienced severe or pervasive harassment because of a protected characteristic. *See Morgan*, 536 U.S. at 116. The Complaint describes workplace disagreements and disciplinary disputes, but it does not allege facts suggesting that any conduct occurred because of Ms. Seibert's race or sex. And to state a failure to accommodate claim under the ADA, a plaintiff must allege that she requested a reasonable accommodation for a disability and that the employer refused such a request. *See* 42 U.S.C. § 12112(b)(5)(A); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quotations omitted). The Complaint does not allege that Ms. Seibert requested an accommodation or that the City denied one.

9

## IV.     CONCLUSION

Ms. Seibert's Complaint describes workplace disputes and disciplinary actions during her employment at DHS, but even when I read it as liberally as possible, the allegations do not plausibly suggest discrimination based on race or sex. Many of the events she identifies fall outside Title VII's filing period, and she did not present many of her claims to the EEOC. I will therefore grant the City's motion to dismiss. I will dismiss Ms. Seibert's claims for retaliation, failure to promote, harassment, and failure to accommodate with prejudice because she did not exhaust those claims before the EEOC, so there is no set of facts that she could plead to salvage those claims. I will dismiss her claims for race and sex discrimination without prejudice and grant Ms. Seibert leave to amend those claims to the extent they arise from conduct occurring on or after October 23, 2023. Ms. Siebert should only file an amended complaint if she believes that she can address the issues that I have identified truthfully and in good faith. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 13, 2026